IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02464-RM-KLM

MARSHA SPENCER also known as Marsha Waddell,

     Plaintiff,

v.

TICI LLC, doing business as Denny's,
G2G MANAGEMENT GROUP, LLC,
ISAIAH DANZIK, an individual, and
VINCE EUPIERRE, an individual,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendant's **Motion to Dismiss and Compel Arbitration** [#21] (the "Motion").  Plaintiff filed a Response [#24] in opposition to the Motion [#21], and Defendant filed a Reply [#27].  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c), the Motion [#21] has been referred to the undersigned for a recommendation regarding disposition.  *See* [#32].  The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#21] be **GRANTED**.

## I. Background

     On September 22, 2022, Plaintiff initiated this action against Defendants TICI LLC, doing business as Denny's ("TICI"), G2G Management Group, LLC ("G2G"), Isaiah

–1–

Danzik ("Danzik"), and Vince Eupierre ("Eupierre").   *Compl.* [#1] ¶¶ 9, 16, 21, 26.
Plaintiff alleges that she worked at several affiliated Denny's restaurants located in the
Denver, Colorado area from approximately October 5, 2020, to March 4, 2022.   *Id.* ¶¶ 1-
2.   The Denny's locations at which Plaintiff worked were affiliated under the TICI/G2G
umbrella.   *Id.* ¶ 2.   Defendant Danzik served as Plaintiff's immediate boss at Denny's,
and Defendant Eupierre is the Chief Executive Officer of G2G, TICI, and non-party MDC
Restaurants, LLC ("MDC").   *Id.* ¶¶ 4, 23, 28.    Plaintiff alleges that Defendants violated
the minimum and overtime wage requirements of the Fair Labor Standards Act of 1938,
as amended ("FLSA"), the Colorado Wage Claim Act, as implemented by the Colorado
Minimum Wage Act, and the Colorado Overtime and Minimum Pay Standards Orders.
*Id*. ¶ 4.

When Plaintiff was hired, she executed a Mutual Arbitration Agreement (the
"Agreement") on her first day of employment.   *Compl.* [#1] ¶ 1; *Def.'s Ex. A, Agreement*
[#22-3] ¶ 12.[1]   The Agreement [#21-3] was entered into by Plaintiff and MDC regarding
all claims or disputes "that could otherwise be filed in state or federal court arising out of
or related in any way to Employee's employment with the Company [i.e., MDC] and/or the
termination of Employee's employment."   *Ex. A, Agreement* [#22-3] ¶ 3.   In the present

---

[1] As discussed in Section II., a motion to dismiss and compel arbitration is determined under Fed.
R. Civ. P. 12(b)(1).   When reviewing a factual attack on subject matter jurisdiction, a district court
may not presume the truthfulness of the complaint's factual allegations, and therefore has wide
discretion to allow affidavits, other documents, and even a limited evidentiary hearing to resolve
disputed jurisdictional facts under the Rule.   *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.
1995).   Accordingly, a court may consider exhibits to a motion to dismiss and compel arbitration
when discussing the background facts of a case.   *See*, *e.g.*, *Schneider v. SRC Energy, Inc.*, 424
F. Supp. 3d 1094, 1098 (D. Colo. 2019) (discussing a consultant agreement between the plaintiff
and a third-party company that was attached as an exhibit to the defendant's motion to dismiss
and compel arbitration).

Motion [#21], Defendants argue that the Court should dismiss Plaintiff's Complaint [#1] and compel arbitration pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.   *Motion* [#21-1] at 2.   Plaintiff argues that because Defendants were not signatories to the Agreement [#21-3], they are not parties to the Agreement and therefore cannot compel arbitration.   *Response* [#24] at 4-5.   Plaintiff also argues that Defendants are not third-party beneficiaries to the Agreement, and similarly cannot compel arbitration on that basis.   *Id.* at 7-11.   The primary issue in the Motion [#21] therefore is whether Defendants may enforce the Agreement [#21-3] as nonsignatories and compel this matter to arbitration.

## II.   Standard of Review

Federal Rule of Civil Procedure 12(b)(1) empowers the Court to dismiss a complaint for lack of subject matter jurisdiction.   The determination of a court's jurisdiction over the subject is a threshold question of law.   *Madsen v. United States ex. rel. U.S. Army Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987).   If at any time, the Court determines that it lacks subject matter jurisdiction, the Court must dismiss the action.   Fed. R. Civ. P. 12(b)(1); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). When reviewing a Rule 12(b)(1) motion, the Court may reference evidence outside of the pleading without converting it to a Rule 56 motion.   *Holt*, 46 F.3d at 1003.   When the moving party challenges the facts upon which subject-matter jurisdiction depends, the Court is entitled to resolve the factual attack on the complaint by making "its own findings regarding disputed jurisdictional facts."   *Celauro v. Fed. Express Ground*, 548 F. Supp. 3d 1034, 1039 (D. Colo. 2021).

–3–

Issues of arbitrability are governed by the Federal Arbitration Act ("FAA"). *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017). "A party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court, which, save for such agreement, would have jurisdiction . . . in a civil action . . . arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA "manifests a liberal federal policy favoring arbitration." *Comanche Indian Tribe v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2014) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Consequently, the Court must "resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). In addition, "this liberal policy 'covers more than simply the substantive scope of the arbitration clause,' and 'encompass[es] an expectation that [arbitration] procedures will be binding.'" *Id.* (citation omitted).

Under the FAA, when parties agree to settle a controversy by arbitration, courts must enforce that agreement "save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2018). The scope of an arbitration agreement, including the question of who it binds and who it may be enforced by, is a question of state contract law. *Reeves v. Enter. Prod. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021); *Arthur Andersen L.L.P. v. Carlisle*, 556 U.S. 624, 630-31 (2009)). Thus,

–4–

"a federal court must apply state contract law principles when determining whether an arbitration agreement is valid and enforceable."   *Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1371 (D. Colo. 2014) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).   Under Colorado law, "a valid and unwaived arbitration clause deprives the court of subject matter jurisdiction until the dispute has been submitted to arbitration." *Lee v. Grandcor Med. Sys., Inc.*, 702 F. Supp. 252, 253 (D. Colo. 1988).

### III.   Analysis

The Court first determines whether Defendants, who are nonsignatories, are nevertheless parties to the Agreement [#21-3].   Finding that they are, the Court then analyzes whether nonsignatory parties may enforce the Agreement and compel this matter to arbitration.[2]

### A.   Whether Defendants are Parties to the Agreement [#21-3]

The Court starts by determining whether Defendants are parties to the Agreement [#21-3].   The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.   *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,473 U.S. 614, 626 (1985).   As mentioned above, the question of who is bound by an arbitration agreement is governed by state contract law.   *Reeves*, 17 F.4th at 1101; *Judd v. Keypoint Gov't Sol., Inc.*, No. 18-cv-00327-RM-STV, 2018 WL

---

[2]   Neither party has challenged the enforceability of the Agreement [#21-3] as a general matter and neither party has alleged that the Agreement is not a valid contract. Similarly, it is undisputed that every claim that Plaintiff has asserted in this case arises out of her employment with Denny's. Accordingly, the Court need not analyze whether the Agreement [#21-3] is generally enforceable and/or a legally valid contract or whether Plaintiff's claims fall within the scope of the Agreement [#21-3].

3526222, at *2 (D. Colo. July 23, 2018).

"In determining the meaning of a contract, courts 'seek to give effect to all provisions so that none will be rendered meaningless.'"  *Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248, 1262 (D. Colo. 2019) (quoting *Mapes v. City Council of City of Walsenburg*, 151 P.3d 547, 577 (Colo. App. 2006)).   In Colorado, "both signatory and nonsignatory parties may be bound by an arbitration agreement if so dictated by ordinary principles of contract law."  *Id.* (quoting *Meister v. Stout*, 353 P.3d 916, 920 (Colo. App. 2015)).   When interpreting a contact, a court must seek to effectuate the "intent and reasonable expectations of the parties . . . ."  *See Winter Park Real Est. & Invs., Inc. v. Anderson*, 160 P.3d 399, 403 (Colo. App. 2007).   "We ascertain the parties' intent by looking to the plain language of the arbitration agreement."  *Lane v. Urgitus*, 145 P.3d 672, 677 (Colo. 2006) (quoting *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003)).   The court will enforce the agreement as written, unless there is an ambiguity in the language, as courts should not rewrite the agreement or limit its effect by a strained construction.  *Id.*   If there are ambiguities in the arbitration agreement, the court affords the parties a presumption in favor of arbitration.   *Allen*, 71 P.3d at 378.

Plaintiff argues that, as a general rule, "only parties to an arbitration agreement can compel arbitration under that contract, and they can only compel arbitration as to another signatory of the agreement."  *Response* [#24] at 4.   Defendants aver that the language of the Agreement [#21-3] makes clear that Plaintiff intended disputes with related nonsignatory parties to be submitted to arbitration.   *Motion* [#21-1] at 9.   In support, Defendants cite the following language of the Agreement [#21-3]:

–6–

[I]n consideration of Employee's employment or continued employment with the Company [MDC] and the mutual promises made in this Agreement, the parties agree as follows:

1.   Binding Arbitration.   The Company and Employee agree to submit to final and binding arbitration all claims or disputes that could otherwise be filed in state or federal court arising out of or related in any way to Employee's employment with the Company and/or the termination of Employee's employment.   This includes, without limitation, claims by the Company against Employee and claims by Employee against (i) the Company, (ii) its employees, officers, directors, agents, (iii) its parent, subsidiary and affiliated entities, and/or (iv) successors and assigns of any of them based on any state or federal statute (including claims for employment discrimination, retaliation or harassment, and unpaid wages), as well as any common law claims (including claims for breach of contract or breach of the implied covenant of good faith and fair dealing, wrongful discharge, defamation, misrepresentation, fraud, and infliction of emotional distress), but excludes claims for workers' compensation benefits, state disability benefits, state unemployment benefits, administrative charges filed with a federal, state or local government office or agency, or any other claim that cannot legally be subject to a pre-dispute arbitration agreement under applicable law.

*Ex. A, Agreement* [#21-3] ¶ 3.

Plaintiff first argues that Defendants' reliance on the Agreement is improper because, at the motion to dismiss stage, the Court may only consider claims within the four corners of the complaint, and the Agreement is not within or referred to in her Complaint [#1].   *Response* [#24] at 3.   However, as discussed in Footnote 1 and in Section II., the Motion [#21] seeks to dismiss Plaintiff's Complaint [#1] for lack of subject matter jurisdiction, and therefore the Motion [#21] is subject to Fed. R. Civ. P. 12(b)(1) and the Court is permitted to consider evidence outside of the Complaint [#1] to make findings of fact.   *See*, *e.g.*, *Celauro*, 548 F. Supp. 3d at 1039; *Schneider*, 46 F. 3d at 1003.

Plaintiff avers that the Agreement [#21-3] does not bind her to arbitration with any

of Defendants because they are not signatories to the Agreement [#21-3] and "this kind of expanding language [of the Agreement [#21-3]] does not permit direct enforcement as to nonsignatory entities . . . ." *Response* [#24] at 3-4.    Plaintiff states that she has no affiliation with the "non-party entity Mancha Development Company, LLC . . . named in the first line of the agreement." *Id.*   The Court notes that the "Company" with which the agreement is explicitly made is MDC Restaurants, LLC, not Mancha Development Company, LLC ("Mancha").   *Ex. A, Agreement* [#21-3] ¶ 1.   Plaintiff mistakenly conflates Mancha with MDC, the Company bound by the Agreement [#21-3].   *Id.*; *Response* [#24] at 3.   Further, Plaintiff argues that, "as alleged in the Complaint and as contained in Defendant's [ ] declaration, MDC does not control nor is it controlled by G2G or TICI," explicitly contesting Defendants' assertion of the corporate relationships between MDC and Defendants.   *Id.* at 9.   Thus, the Court considers whether Defendants are bound by the Agreement [#21-3] based on each Defendant's individual or corporate relationship with MDC Restaurants, LLC.   *See Bohart v. CBRE, Inc.*, No. 17-cv-00355-RM-KMT, 2018 WL 1135535, at *3-4 (D. Colo. Feb. 28, 2018) (holding that, although the arbitration agreement was between the plaintiff and CBRE, Inc., individually named nonsignatory defendants were considered parties to the agreement because they were employees of CBRE, Inc. and the language of the agreement displayed a clear intention to include those employees).

According to the Declaration of Vince Eupierre [#21-2], Defendant Eupierre is the owner and manager of MDC, which is the operator of the Denny's franchises "held" by

–8–

Defendant G2G.   *Decl. of Eupierre* [#21-2] ¶ 5.[3]   Defendant Eupierre is also the owner and manager of Defendant G2G, which owns Denny's franchises, including the ones at issue here.   *Id.* ¶¶ 2, 4.   Finally, Defendant Eupierre owns and manages Defendant TICI, which is the operator of Denny's franchises "held" by Defendant G2G, including the ones at issue here.   *Id.* ¶¶ 2-4.   Defendant Eupierre states that MDC and Defendants G2G and TICI are "all affiliated entities that I own and manage."   *Id.* ¶ 7.

While Plaintiff explicitly contests the corporate relationships between MDC and Defendants G2G and TICI, she does not proffer any evidence to contradict Defendant Eupierre's Declaration [#23-2].   Rather, Plaintiff merely states, without support, that "MDC does not control nor is it controlled by G2G or TICI."   *Response* [#24] at 9. Plaintiff then relies on the lack of an "affiliate" connection between MDC and Defendants as defined by Colo. Rev. Stat. Ann. § 7-101-401(2) to argue that the latter are not "affiliates" of MDC, and therefore are not third-party beneficiaries to the Agreement [#21-3].   *Id.* at 8-10.   However, for reasons discussed below, it is immaterial whether Defendants are considered "affiliates" of MDC because they are parties to the Agreement [#21-3] under the "employees, officers, directors, agents" and the "parent, subsidiary . . ." language of the Agreement.[4]   *Ex. A., Agreement* [#21-3] ¶ 3.

---

[3]   As previously stated, a court has "wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts under 12(b)(1)." *See Wheeler v. Hurdman*, 825 F.2d 257, 258 n.5 (10th Cir. 1987); *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("But when a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, . . . the court may inquire by affidavits *or otherwise*, into the facts as they existed." (emphasis added)).

[4] Because the Court ultimately finds that the nonsignatory Defendants may compel arbitration directly, the Court need not address Plaintiff's argument that Defendants cannot compel

The Court finds, solely for the purposes of adjudicating this motion, that Defendant G2G is a parent company of non-party MDC and Defendant TICI, as Defendant G2G owns the Denny's franchises that are operated by MDC and Defendant TICI.  *Id.* ¶¶ 3, 5.  The Court further finds that Defendant TICI, being a subsidiary of Defendant G2G, is an affiliate of MDC.  *Id.* ¶ 3   Accordingly, the language of the Agreement [#21-3] reflects the parties' intent that Defendants G2G and TICI be bound by the Agreement [#21-3], as it states that it "includes, without limitation, claims . . . by Employee against . . . (iii) [the Company's] parent, subsidiary, and affiliated entities . . . ."  *Agreement* [#21-3] ¶ 3.

The plain language of the Agreement [#21-3] further demonstrates the parties' intent that Plaintiff be required to arbitrate claims against Defendants Danzik and Eupierre.  In her Complaint, Plaintiff states that Defendant Danzik "served as Plaintiff's immediate boss."  *Compl.* [#1] ¶ 23.  Plaintiff also states that Defendant Eupierre is the Chief Executive Officer of Defendant G2G and her employer.  *Id.* ¶¶ 28, 32.  According to the Agreement [#21-3], Plaintiff is bound to arbitrate "claims . . . by Employee against . . . (ii) [the Company's] employees, officers, directors, agents . . . ."  *Agreement* [#21-3] ¶ 3.  Thus, the Agreement [#21-3] reflects the intent of the parties to require arbitration of Plaintiff's claims against Defendant Danzik, an "employee" of MDC through Defendants TICI and G2G, and Defendant Eupierre, an "officer" of MDC and Defendants G2G and TICI.  *Ex. A, Agreement* [#21-3] ¶ 3; *Decl. of Eupierre* [#21-2] ¶¶ 6, 7.

---

arbitration under a theory of estoppel, although the Court notes that Defendants do not raise this argument in their Motion [#21-1].  *See Response* [#24] at 5-7.

The Court notes that in her Complaint, Plaintiff alleges that all Defendants were her employers under the FLSA.   *Compl.* [#1] at 4, 5, 6.   Thus, even if Defendant G2G was not a subsidiary of MDC, and even if Defendant TICI was not an affiliate of MDC, Plaintiff nevertheless refers to Defendants G2G, TICI, Danzik, and Eupierre each independently as her "employer."   *Id.*   The text of the Agreement [#21-3] requires Plaintiff to arbitrate certain specified claims against her employer, including the claims made here.   *Ex. A, Agreement* [#21-3] ¶ 3.   Plaintiff herself has asserted that all Defendants were her "employer," and may not contradict that assertion for purposes of attempting to defeat the Motion [#21].   *Compl.* [#1] at 4, 5, 6.

**B.    Whether Nonsignatory Parties May Enforce Arbitration**

Whether a nonsignatory party may enforce an arbitration agreement is governed by state law contract interpretation principles.   *Schneider*, 424 F. Supp. 3d at 1099 (quoting *Belnap*, 844 F.3d at 1293).   Colorado law requires the Court to "attempt to give the words in the contract their plain and ordinary meaning, unless a contrary intent is evidenced."   *Id.* (citing *Cyprus Amax Min. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003)).   Under Colorado law, nonsignatory parties may compel arbitration if the arbitration agreement recognizes them as intended parties or beneficiaries of the agreement.   *See*, *e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Coors*, 357 F. Supp. 2d 1277, 1279-80 (D. Colo. 2004) (recognizing that nonsignatory agents and third-party beneficiaries have standing to compel arbitration); *Eychner v. Van Vleet*, 870 P.2d 486, 489 (Colo. App. 1993) (holding that a nonsignatory may fall ". . . within the scope of an arbitration agreement and may bring an action on such contract if that is the intent of the

parties."). Thus, "parties may enter into an enforceable agreement to arbitrate notwithstanding the absence of their signatures." *E-21 Eng'g Inc. v. Steve Stock & Assocs., Inc.*, 252 P.3d 36, 39 (Colo. App. 2010).

Plaintiff argues that, as "a somewhat minor point, no agent of MDC actually signed the agreement." *Response* [#24] at 10. However, this is immaterial, as Plaintiff herself recognizes that "the lack of a signature on a contract does not preclude enforcement in and of itself." *Eychner*, 870 P.2d at 489; *Med. Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973) (attaching no significance to the fact that the agreement was not signed by either party as decisions under the FAA have "held it not necessary that a party sign the writing containing the arbitration clause" or agreement); *Caley v. Gulfstream Aerospace Corp.*, 428 F. 3d 1359, 1369 (11th Cir. 2005) (citing "overwhelming weight of authority" in support of the conclusion that the FAA is not limited in application to only signatories of an arbitration agreement).

The Court finds that the plain language of the Agreement [#21-3] defines the Company, i.e., MDC, to include "all of its employees, officers, directors, agents" and "its parent, subsidiary, and affiliated entities," such that Plaintiff is bound to arbitrate with these parties to the Agreement [#21-3]. *Ex. A, Agreement* [#21-3] ¶ 3. As the Court found above, despite not being signatories, all Defendants are intended parties to the Agreement [#21-3]. Therefore, under Colorado law, Defendants may enforce the Agreement [#21-3] against Plaintiff. *See e.g.*, 9 U.S.C. § 4 (enabling parties to an arbitration agreement to invoke the authority of a federal district court to enforce the agreement); *Merrill Lynch, Pierce, Fenner & Smith Inc.*, 357 F. Supp. 2d at 1279

(explaining that the right to compel arbitration derives from a contractual right, and parties to a contract to arbitrate have standing to compel arbitration).

Accordingly, based on the foregoing, and given the unambiguous language of the Agreement [#21-3], the Court **recommends** that the Motion [#21] be **granted**.

### IV.   Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motion [#21] be **GRANTED** and that Plaintiff's claims be **DISMISSED without prejudice**.   *See Merrill v. Pathway Leasing LLC*, No. 16-cv-02242-KLM, 2017 WL 11546218, at *5 (D. Colo. Oct. 5, 2017) (dismissing plaintiff's claims subject to an arbitration agreement without prejudice).

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.   72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.   *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

DATED: February 24, 2023

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge